**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BAYLOR SCOTT & WHITE ALL SAINTS MEDICAL CENTER – FORT WORTH**<br>1400 Eighth Avenue<br>Fort Worth, TX 76104<br><br>Plaintiff,<br><br>v.<br><br>**ROBERT F. KENNEDY, JR.**, In his Capacity as Secretary of the U.S. Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>Defendant. | ) | Case No. |

**COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT**

## INTRODUCTION

1. This civil action is brought by Baylor Scott & White All Saints Medical Center – Fort Worth (hereinafter "Plaintiff," "Provider," or "Plaintiff Hospital") against the Secretary for the United States Department of Health and Human Services (the "Secretary" of "HHS")[1] for judicial review of a final decision rendered on July 10, 2026 by the Provider Reimbursement Review Board ("PRRB" or "Board"), a component of HHS. Judicial review is sought arising from the Board's dismissal of PRRB Case No. 21-1517. The basis for this lawsuit is the Secretary's willful refusal to follow clear, unambiguous federal law. Plaintiff Hospital specifically challenges the Board's dismissal of its administrative appeal of the Medicare Administrative Contractor's ("MAC") refusal to include all Medicaid eligible days, including section 1115 waiver days, in the Medicaid Fraction for the cost year at issue in this case (fiscal year end, hereinafter "FYE," 9/30/2016).

2. This timely action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare Act"), 5 U.S.C. §§ 706 *et seq.* (the Administrative Procedure Act or "APA"), 28 U.S.C. § 1361 (mandamus), and other authorities. The Medicare payments here pertain to how inpatient hospital days should be counted for purposes of calculating the Plaintiff Hospital's Medicare Disproportionate Share Hospital ("DSH") payments for the fiscal year ending ("FYE") on September 30, 2016.

3. The Board's final decision, its dismissal of Plaintiff Hospital's individual appeal, was noticed by letter dated July 10, 2026 (dismissal notice attached as **Exhibit A**). The Secretary and the MAC's refuse to follow the clear dictates of the Centers for Medicare & Medicaid Services ("CMS") Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16,

[1] The Secretary is the proper Defendant in this appeal. *See* 42 C.F.R. § 405.1877(a)(2).

2023) (attached as **Exhibit B**), which provides an independent legal basis, mandamus, for this action.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision), 28 U.S.C. §§ 1331 (federal question), and 1361 (mandamus). *See Heckler v. Ringer*, 466 U.S. 602, 616-17 (1984); *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807,811, 813-15 (D.C. Cir. 2001); *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011). Jurisdiction also is available under 28 U.S.C. § 1331 where the agency renders a final determination for which there is no administrative appeal available. *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).

5. Venue lies in this district pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e)(1).

**PARTIES**

6. Plaintiff, located at 1400 Eighth Avenue, Fort Worth, TX 76104, had at all relevant times a Medicare provider agreement and was eligible to participate in the Medicare program under Provider No. 45-0137. At all times during the relevant time periods pertinent to this complaint, Plaintiff furnished inpatient and outpatient hospital services to Medicare patients.

7. Defendant has offices at 200 Independence Avenue, SW, Washington DC 20201 and is the federal officer responsible for the administration of the Medicare program. As such, Defendant Kennedy, Jr. is sued in his official capacity as Secretary of HHS.

**GENERAL BACKGROUND OF THE MEDICARE PROGRAM**

8. The Medicare Act establishes a system (the "Medicare program") of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. § 1395c. The Medicare program is federally funded and administered by the Secretary through CMS and

its contractors. 42 U.S.C. § 1395kk(a); 42 Fed. Reg. 13262 (Mar. 9, 1977). CMS implements the Medicare program, in part, through rulemaking. *See* 42 C.F.R. § 401.108. In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes other interpretative rules implementing the Medicare program, which are usually compiled in CMS manuals. The Secretary also issues other sub-regulatory guidance which generally do not have the force and effect of law. This civil action involves Medicare Part A. Part A provides coverage and payment for, among others, inpatient hospital services on a fee-for-service basis. 42 U.S.C. §§ 1395c to 1395i-6. Such items/services are furnished to Medicare beneficiaries by providers of services, including hospitals, that have entered into written provider agreements with the Secretary pursuant to 42 U.S.C. § 1395cc. Providers are paid (reimbursed) by CMS through MACs. *See* 42 U.S.C. § 1395kk-1(a).

9. Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395kk-1(a)(3)(B). The amount of Medicare Part A payment owed to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS. *See* 42 C.F.R. § 405.1803.

10. Effective with cost reporting years beginning on or after October 1, 1983, hospitals are reimbursed under the Hospital Inpatient Prospective Payment System ("IPPS") for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F).

11. Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result in part from the poorer health of those patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing such services.

12. Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. § 1395ww(d)(5)(F). The DSH program was in effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

13. There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" and the less common "Pickle method." *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I)-(II). Plaintiff Hospital's DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on a hospital's disproportionate patient percentage (hereinafter, "DPP"). 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vi).

14. The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). 42 U.S.C. § 1395ww(d)(5)(F)(vi). Thus, the two fractions serve as a "proxy" of a hospital's low-income patients, rather than having CMS count the actual number of those patients.

15. The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients whilst *also* being entitled to Supplemental Security Income ("SSI") benefits, a federal low-income supplement. The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.

16. The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

17. The Medicaid Fraction, therefore, is intended to account for hospital inpatients "…who were not entitled to benefits under [Medicare] [P]art A," who were "…eligible for medical assistance…" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital. The Medicaid Fraction is at issue in this case.

18. The statute further provides for purposes of determining the Medicaid Fraction "…the Secretary may, to the extent and for the period the Secretary determines appropriate, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under subchapter XI." 42 U.S.C. §1395ww(d)(5)(F)(vi)(II). Patient days of patients who receive benefits under a demonstration

project approved under subchapter XI of the Social Security Act are commonly referred to as "section 1115 waiver days" (because of the Secretary's waiver or demonstration project authority under section 1115 of the Social Security Act). The Secretary's non-inclusion of section 1115 waiver days in Plaintiff Hospital's Medicaid Fraction for its 2016 fiscal year ("FY") is at the heart of this action. As discussed, *infra.,* section 1115 waiver days *are* in fact Medicaid **eligible** days and need not be distinguished from any and all other Medicaid **eligible** days when presenting an appealable issue before the Board. (*See*, *e.g.*, *Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121, 122 (D.C. Cir. 2020); *see also* CMS Change Request 12669, Transmittal No. 11912 (March 16, 2023); (Ex. B at 3)).

## THE RELEVANT MEDICARE APPEALS PROCESS

19. At the close of its FY, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. For Medicare, each hospital's MAC is required to analyze and audit the hospitals annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital also is required to make a claim, or alternatively self-disallow, for any modification to its basic IPPS payment adjustment, such as the DSH adjustment.

20. The Medicare Act provides that if a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in its NPR, and the hospital satisfies the amount in controversy requirements (not an issue in this case), the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of receiving its NPR (or any revised NPR).

42 U.S.C. § 1395oo(a). The statute allows a hospital that is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of 42 U.S.C. § 1395ww to obtain a PRRB hearing by requesting the hearing within 180 days after notice of the Secretary's final determination. 42 U.S.C. § 1395oo(a)(1)(A)(ii), (a)(3).

21. The regulations interpret the statutory requirements by stating that "…the date of receipt by the Board of the provider's hearing request must be no later than 180 days after the date of receipt by the provider of the final contractor or Secretary determination." 42 C.F.R. § 405.1835(a)(3).

22. In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction and procedure. The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877. The Secretary has delegated authority under the statute to review PRRB decisions to the CMS Administrator. Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

23. A hospital may obtain judicial review by filing suit in the U.S. District Court for the judicial district in which the hospital is located within 60 days of receipt of the Secretary's final administrative decision. 42 U.S.C. § 1395oo(f)(1). Pursuant to 42 C.F.R. § 405.1801(a)(1)(iii), the date of receipt by a party involved in proceedings before the PRRB is

presumed to be five days after the date of issuance of a PRRB document.[2] As such, the deadline in this case to seek judicial review is September 13, 2026. This filing is therefore timely.

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

24. Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "…shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "…reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "…reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … unsupported by substantial evidence in a case … reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

## LITIGATION OVER SECTION 1115 WAIVER DAYS AND THE SECRETARY'S ACQUIESCENCE IN FIFTH AND D.C. CIRCUIT DECISIONS

25. In *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018), the Court rejected the Secretary's assertion that for hospital days under a section 1115 waiver to be included in the Medicaid Fraction, the terms of waiver agreement between the State Medicaid agency and the Secretary must contain an explicit statement that patients covered by the waiver are "…eligible for inpatient hospital services." *See id.* at 46. That Court disagreed. *See id.* at 46-47. According to the *HealthAlliance* court:

> [i]t is clear from the plain language of the regulation's text [at 42 C.F.R. § 412.106(b)(4)(i)] that patients who are eligible to receive comprehensive medical care through an insurance program authorized under a section 1115 waiver (as evidenced by their eligibility for inpatient hospital services) are to be included in

[2] Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. § 1395oo(f). Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within 30 days of a "final determination."

> the Medicare reimbursement formula, and whether or not the waiver agreement through which the Secretary authorized the program *says* anything about their eligibility for inpatient hospital services is irrelevant to the calculation of a hospital's disproportionate share hospital adjustment.

*Id.* at 47. This remains true in this dispute.

26. A similar issue was presented in *Forrest General Hospital v. Azar*, 926 F.3d 221 (5th Cir. 2019). The Secretary claimed an uncompensated care pool related to Hurricane Katrina was not part of a section 1115 waiver. *See id.* at 232. In disagreeing, the Fifth Circuit found the

> …excellent opinion in *HealthAlliance Hospitals, Inc. v. Azar* extremely persuasive. That opinion convincingly explains why the law governing the inclusion of section 1115 waiver patient days in the Medicaid fraction is straightforward: the plain regulatory text demands that such days be included—period.

*Id.* at 234 (citations omitted). The Fifth Circuit also held that the statute was unambiguous and noted with respect to 42 C.F.R. § 412.106(b)(4) that, "[w]hat does *not* matter for purposes of this regulation is what the plan documents say about eligibility for particular services." *See Forrest General at* 228-229. Following *Forrest General*, the Secretary continued to litigate, and lose, the issue whether days associated with patients who were covered under a section 1115 waiver that included an uncompensated care pool, and which <u>did not specifically mention</u> inpatient hospital benefits, should be included in the Medicaid Fraction. *See, e.g., Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121, 122 (D.C. Cir. 2020).

27. As a result of those losses, CMS issued guidance acquiescing to the Fifth Circuit and D.C. Circuit decisions. (*See* Ex. B). The manual instructions provide that upon a hospital submitting a listing of its section 1115 waiver days, the hospital's MAC must do the following:

> [f]or cost reports that are open via a [] (PRRB) appeal that has not yet been heard before the PRRB, [s]ection 1115 days will be reviewed through the normal Administrative Resolution process within 24 months of the CR implementation date. In order for the Medicare Administrative Contractor (MAC) to consider the providers' Section 1115 days in recalculation of the Medicaid fraction, the

> following review shall take place, only as deemed necessary by the Uniform Desk Review process or Administrative Resolution process:
>
> 1. For providers with patients whose inpatient stay is covered by a Section 1115 waiver program funding pool, which pays health care providers that provide uncompensated care to patients who are uninsured or underinsured and is matched by Title XIX federal funds, the MAC shall review the State's Section 1115 program documents to determine the method by which the provider identifies eligible inpatient stay days.
>
> 2. The MAC shall select a sample of accounts from the provider's submitted Section 1115 log for further review.
>
> 3. The MAC shall request documentation from the provider for the selected sample and review the documentation to ensure that: a) the provider has accurately included the inpatient stay in the Section 1115 waiver program for reimbursement through the funding pool based on the provider's Section 1115 approved program documents; and b) has accurately included the inpatient stay on the Section 1115 log.
>
> 4. The MAC shall review the provider's applicable documentation that details the patient's length of stay and the acute-care unit that the patient's stay occurred to verify the patient's length of stay in an inpatient acute section of the hospital.

(Ex. B at 4).

28. In the FY 2024 IPPS rulemaking, the Secretary proposed and finalized new and restrictive regulations on including section 1115 waiver days in the Medicaid Fraction; however, these regulations are prospective only. *See* 88 Fed. Reg. 58640, 59017 (Aug. 28, 2023) ("Finally, we are finalizing as proposed that our revised regulation would be effective for discharges occurring on or after October 1, 2023").

## <u>SPECIFIC FACTS PERTAINING TO THIS CASE</u>

### A. *Dismissal of Section 1115 Waiver Days "Issue"*

29. On January 25, 2021, the MAC issued an NPR for Plaintiff's cost year ending September 30, 2016. On July 16, 2021, the Board received Plaintiff's individual appeal request (attached as **<u>Exhibit C</u>**), appealing its DSH adjustment. Plaintiff timely appealed the MAC's non-

inclusion of Medicaid eligible days, stating that "[t]he MAC, contrary to the regulation, failed to include ***all Medicaid eligible days***, ***including but not limited to*** Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation." (Ex. A at 4, Ex. C at 25) (emphasis added). The italicized language above demonstrates that Plaintiff appealed *all* Medicaid eligible days, which by definition ***included*** section 1115 waiver days.

30. Notwithstanding the noted language, on July 10, 2026, the Board dismissed Plaintiff's appeal of what it termed the "Section 1115 Waiver days issue." (Ex. A at 10). The Board provided one primary reason for its dismissal, stating "[b]ecause the Provider did not raise the Section 1115 Waiver days prior to the deadline to add issues, and it is a distinct issue, the Board finds that the issue was not properly or timely appealed. The Medicaid Eligible days issue as stated in the original appeal request cannot be construed to include Section 1115 Waiver days." That is, the Board contends section 1115 waiver days are not Medicaid eligible days but are instead a separate and distinct issue which, the Board claimed, the Provider failed to include in its initial appeal request. (*Id.* at 13).

31. The Board proffered several alternative rationales to support its decision, but all fail to do so. (*See id.* at 13). It claimed that: (1) "…there is no indication that any Section 1115 Waiver days were included with the as-filed cost report which, if true, would make them an unclaimed cost and provide an independent basis for dismissal;" (2) "…even if the Provider had included [the section 1115 waiver days issue] in its appeal request (***which it did not***), the Provider failed to properly develop the issue in its [preliminary position paper] filing … the Provider's [preliminary position paper] does not even mention Section 1115 Waiver days…", and (3) "…[the Provider's final position paper] does not identify the specific 1115 Waiver days program(s) at issue

… the final [position paper] does not discuss whether or not the Section 1115 Waiver days at issue would qualify under 42 C.F.R. § 412.106(b)(i)-(ii) as 'days attributable to populations eligible for Title XIX matching payments through a waiver approved under Section 1115 of the Social Security Act' and the patients underlying those days are 'deemed eligible for Medicaid' based on 'the patient [being] eligible for inpatient hospital services . . . under a waiver authorized under Section 1115(a)(2) . . . on that day, regardless of whether particular items or services were covered.' Rather, the final [position paper] is perfunctory in that it only makes cursory conclusions. [n. 24]" (Ex. A at 13).

32. In footnote 24 of its dismissal, the Board questioned specific language in Plaintiff's final position paper submitted on April 17, 2026 (attached as **Exhibit D**), stating:

> "For example, BS&W [*i.e.*, Plaintiff's health system] cites to *Forrest General Hosp.*, 926 F.3d 221 (5th Cir. 2019) for the proposition that 'the plain language of the statute and [the] regulations require[s] inclusion in the Medicaid Fraction of the days belong[ing] to individual[s] who are included in a section 1115 demonstration project that provides benefits through an uncompensated care pool.' However, BS&W fails to explain why this sweeping statement is relevant to the § 1115 waiver days at issue. Is BS&W asserting that the § 1115 waiver days at issue relate to an uncompensated care pool? Is that pool similar to that in *Forrest General Hosp.*? BS&W fails to brief the merits of its claims and fails to establish the Board's jurisdiction over the § 1115 waiver day issue as required by 42 C.F.R. § 405.1853(b)(2). Indeed, the quoted sentence is the only time the final [position paper] references 'uncompensated care pool.'"

(Ex. A at 13, n. 24; *see* Ex. D at 12). The rhetorical questions posed by the Board in its note 24, *supra,* are meant to place an excessive and illogical burden upon providers and representatives, including Plaintiff; that is to say, while the Board should be addressing reasonable expectations for the content of a position paper, it seems to justify imposing upon providers, including Plaintiff, unreasonably exhaustive and expansive expectations more akin to a motion for summary judgment filing in a civil court proceeding. Moreover, the Board relies upon a fabricated differentiation unsupported by any statutory language, claiming that "…Section 1115 Waiver days are not

*traditional* Medicaid Eligible days…" in support of its contention that such waiver days are somehow an issue that must be regarded and therefore addressed as "separate and distinct" from all other Medicaid eligible days. (*See* Ex. A at 10, 12); (emphasis added). To be clear, a *Medicaid eligible* day that the Board conveniently distinguishes as either being *traditional or not traditional* for purposes of deciding the adequacy of a provider's presentment of its appeal is simply not the legal standard that should logically be imposed. Rather, whether a patient day is "regarded as" a Medicaid "*eligible*" day is the *sole* and appropriate standard required, as set forth within applicable law and regulations. (*See*, *Forrest Gen. Hosp. v. Azar*,[3] *Bethesda Health, Inc., v. Azar*,[4] *supra*, and Ex. B at 3).

B. *Substantial Evidence Supports Plaintiff's Position*

33. As mentioned *supra*, "…the law governing the inclusion of § 1115 waiver patient days in the Medicaid fraction is straightforward: The plain regulatory text demands that such days be included—period."[5] This statutory and regulatory interpretation was affirmed by the court in *Bethesda Health Inc., v. Azar*,[6] and was accepted by CMS in its publication of Change Request 12669, Transmittal No. 11912 (March 16, 2023). (Ex. B at 4). As such, there is no statutory difference between section 1115 waiver days and Medicaid eligible days in terms of their inclusion in the numerator of the Medicaid Fraction and administrative appeals thereof.

34. The Board's distinction of a purely *fictional* "Section 1115 Waiver days <u>issue</u>" was disingenuous. (Ex. A at 10) (emphasis added). The <u>issue</u> properly before the Board in Plaintiff's administrative appeal was the inclusion of <u>all</u> Medicaid eligible days for purposes of calculating

---

[3] *Forrest General Hospital v. Azar*, 926 F.3d 229 (5th Cir. 2019)
[4] *Bethesda Health Inc., v. Azar*, 389 F. Supp. 3d 32, (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020)
[5] *Forrest General Hospital v. Azar*, 926 F.3d 234 (5th Cir. 2019) (referring to the opinion in *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018)).
[6] *Bethesda Health Inc., v. Azar*, 389 F. Supp. 3d 32, (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020)

DSH reimbursement, which would definitionally and therefore decidedly include section 1115 waiver days.

35. The regulations at 42 C.F.R. § 405.1835 contain requirements for appealing an issue and a time limit on adding an issue – not on "sub-issues"[7] or "components" of an issue. Both a June 25, 2004, proposed rule (69 Fed. Reg. 35716) and a May 23, 2008, final rule (73 Fed. Reg. 30190) support that an "issue" is encapsulated by a specific cost report adjustment. They do not slice and dice an "issue" into component parts, including the specific reason why Medicaid eligible days were not counted in the numerator of the Medicaid Fraction of the DPP.

36. For example, the proposed rule states that:

> … to preserve its appeal rights, a provider must either claim an item on its cost report where it is seeking reimbursement that it believes to be in accordance with Medicare policy, or self-disallow the item where it is seeking reimbursement that it believes may not be in accordance with Medicare policy … Note that we are using the term "item" instead of "cost" to emphasize that our proposed policy would refer to determinations of amounts due to providers subject to a prospective system as well as determinations of reimbursement due to providers that are paid under cost reimbursement principles.

69 Fed. Reg. at 35722. Similar language appears in the final rule at 73 Fed. Reg. 30194. A MAC's cost report determination is synonymous with an "adjustment." In this case, the same adjustment to so-called "*traditional* Medicaid eligible days" also governs Medicaid eligible days associated with beneficiaries covered under a section 1115 waiver. (Ex. A at 12). To the extent that the regulations were interpreted as requiring providers to appeal "sub-issues" or "components" of issues, the regulations would impermissibly restrict the PRRB's jurisdiction as set forth in the statute.

/ / / /

---

[7] The Board claims it dismissed the "*alleged* Section 1115 Waiver days sub-issue" of Plaintiff's administrative appeal. (Ex. A at 13) (emphasis in original).

C. *The Board's Rule 8 Is Arbitrary and Invalid*

37. Rule 8 of the August 29, 2018, version of the PRRB Rules—which provides that "…each contested component must be appealed as a separate issue…"—is internally inconsistent with Rule 7. (Ex. A at 11). Whereas Rule 8 refers to "components" of an issue, and gives section 1115 waiver days as an example, Rule 7.2.1 provides that, for purposes of identifying the "issue" under appeal, the provider needs to submit an "issue title and a concise issue statement…" that describes the cost report adjustment, including the cost report adjustment number, the controlling authority, why the cost report adjustment is incorrect, how the payment should be determined differently, the reimbursement effect, and the basis for jurisdiction before the PRRB. (*See* Ex. A at 11). **Thus, Rule 8 is inconsistent with both the regulations *and* Rule 7.**

38. Whereas Rule 7 directs providers to Rule 8, Rule 8 directs the providers to Rule 7, making this type of circular reasoning a thinly veiled attempt to obfuscate providers rather than enlighten them. Indeed, all that is served by that confusion is an endless loop of inconsistent propositions, creating ambiguity and logically flawed explanations that leaves providers baffled.

39. Moreover, Rule 8 is predicated on the supposed need "[t]o comply with the regulatory requirement…" regarding specifically identifying the items in dispute. Rule 8 proceeds from the misunderstanding that the regulations require that "components" of an issue *must* be identified, when in fact, and as explained above, this is not true. For this reason alone, Rule 8's requirement to identify "components" of an issue is arbitrary and capricious, thus, invalid.

40. The supposed requirement that a provider go further and specify not only DSH reimbursement, and not only the Medicaid eligible days portion of such reimbursement, but also the section 1115 waiver days component of Medicaid eligible days, is not found in the statute, but only in the PRRB rules. The Board has no authority to expand or constrict its jurisdiction given to

it by Congress. Its requirement that providers must describe "components" of issues simply to obtain a hearing conflicts with the statute and is facially invalid.

41. In *Azar v. Allina Health Services et al.*, the Supreme Court held "…the phrase 'substantive legal standard,' which appears in § 13955hh(a)(2) and apparently nowhere else in the U. S. Code, cannot bear the same construction as the term 'substantive rule' in the APA…" and that a new policy that establishes or changes a "substantive legal standard" that affects Medicare benefits must be subject to the statutory process of public notice-and-comment rulemaking. *See Azar v. Allina Health Services et al.*, 587 U.S. 566, 579, (2019); *see also* 42 U.S.C. § 1395hh(b). The Supreme Court did not disturb the D.C. Circuit's holding below that "…the Medicare Act requires notice-and-comment rulemaking for any (1) 'rule, requirement, or other statement of policy' that (2) 'establishes or changes' (3) a 'substantive legal standard' that (4) governs 'payment for services.'" *Allina Health Servs. v. Price*, 863 F.3d 937, 943 (D.C. Cir. 2017). Nor did it disturb the D.C. Circuit's holding that "'[s]ubstantive law' is law that 'creates, defines, and regulates the rights, duties, and powers of parties.'" *Id.*

42. Rule 8 of the August 29, 2018, version of the PRRB Rules—in effect at the time of this appeal and acts as a logical extension of Rule 8 of the August 21, 2008, version of the PRRB Rules—specifies that certain issues must be appealed separately. Rule 8 of the August 21, 2008, version of the PRRB Rules changed a "substantive legal standard" with respect to payments under the Medicare Act because it defines or regulates the rights of providers to proceed before the PRRB. As such, it should have but did not go through notice-and-comment rulemaking, and it along with all subsequent versions of Rule 8 are therefore invalid under clear Supreme Court precedent. *See*, *e.g.*, *Allina Health Services et al.*, 587 U.S. at 579.

/ / / /

D. *The PRRB's Alternative Reasons for Dismissal were Arbitrary and Capricious*

43. Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "…shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "…reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "…reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … unsupported by substantial evidence in a case … reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

44. First, the PRRB's assertion that it was an independent basis for dismissal that "…there is no indication that any Section 1115 Waiver days were included with the as-filed cost report…" was arbitrary and capricious, especially because MACs frequently accept days identified *after* the cost report is filed. (Ex. A at 13). The total count of Medicaid eligible days is a variable aspect of a hospital's cost report that depends on factors that can change after the hospital's initial cost report is filed. The inherent retroactive nature of Medicaid eligibility determinations means that a provider will never know which patients will eventually be "regarded as" Medicaid eligible for the purposes of calculating DSH reimbursement at the time of admission. As is the case with other Medicaid eligible days, the treatment of this variability likewise applies to section 1115 waiver days.

45. Second, with respect to the proper development and identification of "…the <u>specific</u> [section] 1115 Waiver days program(s) at issue…" in Plaintiff's preliminary and final position papers (Plaintiff's preliminary position paper attached as **<u>Exhibit E</u>**), the Board's citation to and reliance on 42 C.F.R. §§ 405.1853(b)(2)-(3), 42 C.F.R. § 412.106(b), and Board Rules 23

to support its decision was arbitrary and capricious. (*See* Ex. A at 13) (emphasis added). 42 C.F.R. §§ 405.1853(b)(2)-(3), in pertinent part, provides only:

> (2) Each position paper must set forth the relevant facts and arguments regarding ... the merits of the provider's Medicare payment claims for each remaining issue.
>
> (3) Exhibits regarding the merits of the provider's Medicare payment claims may be submitted in a timeframe to be decided by the Board through a schedule applicable to a specific case or through general instructions.

Nothing in the regulation requires a provider to identify "…the <u>specific</u> [section] 1115 waiver program(s) at issue…" within its position papers.

46. Moreover, 42 C.F.R. § 412.106(b) pertains only to requirements for whether days should be counted *by the MAC* as Medicaid-eligible in a hospital's DSH calculation, not requirements for the Board's jurisdiction over the Provider's appeal. Similarly, Board Rule 23 does not require identification of the "…the <u>specific</u> [section] 1115 Waiver days program(s) at issue." (Ex. A at 13). The Board's appeal to this supposed requirement was disingenuous at best as there was, during the fiscal year under appeal and when Plaintiff Hospital's appeal was filed, *<u>only one Texas section 1115 waiver program</u>*, the Texas Healthcare Transformation and Quality Improvement Program ("<u>THTQIP</u>"). (*See* CMS Special Terms and Conditions, attached as **<u>Exhibit F</u>**, at 47-50).

47. Plaintiff, in support of the inclusion of section 1115 waiver days in its Medicaid Fraction, explained in its final position paper that "CMS has acquiesced in *Bethesda* and is now following the statute and the plain meaning of its own regulations (which regulations represent the official policy of CMS all along) and [should be] properly accounting for 1115 Waiver days as Medicaid Eligible days. *See* CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023) ('Transmittal 11912'), attached as Exhibit P-3." (Ex. D

at 12-13). The Board included only the first of three court opinions cited by Plaintiff[8] when discussing the inclusion of section 1115 waiver days in its Medicaid Fraction to demonstrate that Plaintiff's final position paper failed "…to brief the merits of its claims and fails to establish the Board's jurisdiction over the § 1115 waiver day issue as required by 42 C.F.R. § 405.1853(b)(2)." (Ex. A at 13, n. 24).

48. The D.C. Circuit's *Bethesda* opinion, as well as the *Forrest General Hospital* and *HealthAlliance Hospitals, Inc.* opinions cited as "well-reasoned" therein, directly support Plaintiff's claim regarding the merits of the inclusion of section 1115 waiver days in its Medicaid Fraction. *See Bethesda Health Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020). CMS's acquiescence to the D.C. Circuit's holding in *Bethesda* in its March 16, 2023 publication further establishes the Board's jurisdiction over the section 1115 waiver days at issue as part of the Medicaid Eligible Days issue, contrary to the Board's assertion that it is a "distinct issue." (Ex. A at 13).

49. The recent case decided by Judge Pittman in the Northern District of Texas, *Covenant Medical Center v. Robert F. Kennedy, Jr.*, No. 4:26-cv-00077-P (opinion and order attached as **Exhibit G**) further affirmed Plaintiff's position with respect to the merits of the inclusion of section 1115 waiver days in its Medicaid Fraction. On July 27, 2026, Judge Pittman found the Secretary's rule, 88 Fed. Reg. 58640, 59332 (Aug. 29, 2023), 42 C.F.R. §412.106(b)(4)(iii) (the "Exclusion Rule"), to be unlawful and vacated the regulation. As the Court noted, the Exclusion Rule sought to establish that beneficiaries of Uncompensated Care Pool payments under an authorized section 1115 waiver program "… 'are not regarded as eligible for

[8] The Board excluded Plaintiff's secondary and tertiary citations following *Forrest General Hosp.*, 926 F.3d 221 (5th Cir. 2019), namely *HealthAlliance Hospitals, Inc. v. Azar*, 346 F. Supp. 3d 43(D.D.C. 2018) and *Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32, (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020). (Ex. D at 12).

Medicaid for purposes of [the Medicaid Fraction] … and the days of such patients may not be included in this [] computation.' 42 C.F.R. § 412.106(b)(4)(iii)." (Ex. G at 8). The Court determined the Secretary's interpretation of the statute[9] (*i.e.*, the regulatory text) was "roundly" rejected by Fifth Circuit precedent "and contradict[ed] the statute's plain text." (*See* Ex. G at 8 (citing *Forrest Gen. Hosp. v. Azar*, 926 F.3d at 228 (5th Cir. 2019))). Based on clear precedent, the Court granted vacatur of the Exclusion Rule under 5 U.S.C. § 706. (*See* Ex. G at 13). The Court further pointed out that the Secretary's statutory interpretation has been addressed and rebuked by the Fifth Circuit and D.C. Circuit in *Forrest General* and *Bethesda Health, Inc. v. Azar*,[10] respectively, stating:

> [s]ection 1395ww(d)(5)(F)(vi)(II) requires HHS to "include days that a hospital treated patients eligible under a Medicaid-approved state plan in the Medicaid fraction's numerator." [*Forrest General*, 926 F.3d at 226]. The only other court to address this question, the D.C. Circuit, agrees. *Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32, 43–44 (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020). This Court need not entertain further what the Fifth Circuit has already addressed. *See Forrest*, 926 F.3d at 226.

(Ex. G at 9).

50. This significant decision affirms Plaintiff Hospital's position that "[p]atients whose health care costs, including inpatient hospital services costs, for a given day are claimed for payment by a provider from an uncompensated, undercompensated, or other type of funding pool authorized under section 1115(A) of the Act to fund providers' uncompensated care costs are" *indeed* "regarded as eligible for Medicaid for purposes of [42 C.F.R. § 412.106(b)(4)(ii)] on that day and the days of such patients" *should* "be included in [the Medicaid Fraction]" thus the category of Medicaid eligible days and appeals thereof definitionally include such "section 1115 waiver days." (*See* Ex. G at 6 (citing the Exclusion Rule)).

---

[9] 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)

[10] *Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32, 43–44 (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020)

51. Finally, the Board's comparison of Plaintiff's language in its initial appeal and preliminary position paper to the provider's language in *Evangelical Community Hospital, et al. v. Becerra* misses the mark. Plaintiff does indeed "…specify which portion of the calculation was incorrect…" and "…how the fraction should have been calculated differently…" in its initial issue statement stating that, "[t]he MAC, contrary to the regulation, failed to include ***all Medicaid eligible days***, ***including but not limited to*** Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation." (Ex. A at 4, 13-14, Ex. C at 25) (emphasis added).

52. Further, Plaintiff stated in its preliminary position paper that it "…disagrees with the MAC's calculation of the computation of the disproportionate patient percentage set forth at 42 C.F.R. § 412.106(b)(4) of the Secretary's Regulations," specifically stating that, "[b]ased on the Listing of Medicaid Eligible days being sent under separate cover, the Provider contends that the total number of days reflected in its' [sic] 2016 cost report does not reflect an accurate number of Medicaid eligible days, as required by HCFA Ruling 97-2 and the pertinent Federal Court decisions." (Ex. E at 11-12). It is clear, therefore, that the provider's language criticized as lacking "…the requisite specificity…"[11] by the court in the *Evangelical Community Hospital* opinion is incomparable to Plaintiff's language in its initial appeal request and preliminary position paper, thus the Board's appeal thereto is arbitrary and capricious.

E. *Dismissal of DSH Payment - Medicaid Eligible Days Issue*

53. The Board dismissed the DSH Payment - Medicaid Eligible Days issue stating that it "…finds that the Provider has failed to satisfy the requirements of 42 C.F.R. §§ 412.106(b)(4)(iii) and 405.1853(b)(2)-(3) and Board Rules 25.2.1 and 25.2.2 related to the submission of

[11] No. 21-cv-01368, 2022 WL 4598546 (D.D.C. Sep. 30, 2022).

documentary evidence required to support its claims or describe why said evidence is unavailable." (Ex. A at 10).The Board's dismissal of the DSH Payment - Medicaid Eligible Days issue was also due to it finding "…that the Provider failed to fully develop the merits of the Medicaid eligible days issue because, [sic] it did not include a listing with the [preliminary position paper]." (*Id.*)

54. The Board further stated that Plaintiff had "…failed to explain why…" the "…redacted exhibit with a 36-page listing of 5,237 days…" filed with its final position paper "was so much larger than the original estimate of 150 days included in the appeal request, nor did it explain why it was being submitted at such a late date." (*Id.*) The Board additionally noted that the listing "…had not been verified with the State … and, as such, fails to meet the minimum threshold burden of proof under 42 C.F.R. § 412.106(b)(4)(iv). Thus, the Board finds that the Provider has abandoned the issue." (*Id.*)

F. *The Secretary's Actions Violate the APA and Other Authorities*

55. Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "…shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "…reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "…reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

56. By the Secretary's own regulations regarding position papers as mentioned previously, 42 C.F.R. §§ 405.1853(b)(2)-(3) provides only:

> (2) The Board has the discretion to extend the deadline for submitting a position paper. Each position paper must set forth the relevant facts and arguments regarding

> the Board's jurisdiction over each remaining matter at issue in the appeal (as described in § 405.1840 of this subpart), and the merits of the provider's Medicare payment claims for each remaining issue.
>
> (3) In the absence of a Board order or general instructions to the contrary, any supporting exhibits regarding Board jurisdiction must accompany the position paper. Exhibits regarding the merits of the provider's Medicare payment claims may be submitted in a timeframe to be decided by the Board through a schedule applicable to a specific case or through general instructions.

This regulation does not require providers to enumerate in position papers the specific Medicaid eligible days at issue, which are important to the MAC's, but not the PRRB's, adjudication. As stated above, 42 C.F.R. §§ 405.1853(b)(2)-(3) simply requires position papers to set forth the "relevant facts and arguments" regarding Board jurisdiction and the merits, with supporting exhibits.

57. The Board's references to the Provider's obligations under 42 C.F.R. §412.106(b)(4)(iv) are similarly unavailing. That regulation provides that for the purposes of the ***MAC's calculation of the Medicaid Fraction***, the following applies:

> (iv) The hospital has the burden of furnishing data adequate to prove eligibility for each Medicaid patient day claimed under this paragraph, and of verifying with the State that a patient was eligible for Medicaid during each claimed patient hospital day.

Notwithstanding the Board's mistake, section 412.106 relates ***only*** to a provider furnishing data ***to the MAC*** for its DSH computation, and not to any requirement of what must be filed with the Board. Neither 42 C.F.R. § 412.106(b)(4)(iii) nor §§ 405.1853(b)(2)-(3) required the Provider to submit specific Medicaid eligible days with its preliminary nor final position papers.

58. Plaintiff also was compliant with PRRB Board Rules, which do not require submission of a listing of specific Medicaid eligible days. Board Rule 25 relates to the submission of documents necessary to support a provider's position. Board Rules specifically direct that protected health information or other personally identifiable information "is generally not

necessary for documentation submitted to the Board." Board Rule 1.4. A listing of specific Medicaid eligible days, while necessary for the MAC's ultimate audit of the Provider's claims, was not necessary for the PRRB's consideration of the issue.

59. Furthermore, the Board's supposed conclusion "…that the Provider has abandoned the issue," (Ex. A at 10), was erroneous, arbitrary and capricious. Plaintiff's preliminary position paper specifically listed the reimbursement impact of the Medicaid Eligible Days issue as "$47,279." (Ex. E at 20). Additionally, Plaintiff stated that its claim "…that the total number of days reflected in its' [sic] 2016 cost report does not reflect an accurate number of Medicaid eligible days…" was "[b]ased on the Listing of Medicaid Eligible Days being sent under separate cover." (*Id*. at 12).

60. Notwithstanding the fact that submission of a listing of specific Medicaid eligible days is not necessary for the Board's adjudication, Plaintiff cannot be expected to produce a listing of days that have not yet been confirmed by the State. Plaintiff contends that it is a known frequent occurrence of providers reporting difficulties and delays in receipt of timely data and verifications requested from many state Medicaid agencies. Given that Plaintiff submitted its final position paper with a listing of Medicaid eligible days pending receipt and verification of State eligibility data, the Board had more than enough information to confirm jurisdiction and properly adjudicate the issue. Due to the Board's and MAC's flawed understanding of the inherent retroactive nature of Medicaid eligibility, it was arbitrary and capricious for the Board to disregard Plaintiff's submitted listing of additional Medicaid eligible days and conclude "…that the Provider has abandoned the issue." Based upon the arbitrary and capricious nature of the Board's analysis, rationale and judgment, it then chose to dismiss Plaintiff's appeal.

## Count I

**Judicial Review Under the Medicare Act and the APA**

**(The Board's Dismissal of the Section 1115 Days "Sub-Issue" was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

61. Plaintiff incorporates paragraphs 1-60 of this Complaint by reference.

62. The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id.* § 706(2)(E).

63. The Board's dismissal of the section 1115 waiver days component of its appeal relating to Medicaid eligible days was ultra vires, arbitrary, capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## Count II

**Judicial Review under 28 U.S.C. § 1331 and the APA**

**(The MAC's Determination was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

64. Plaintiff incorporates paragraphs 1-63 of this Complaint by reference.

65. The MAC's refusal to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023) and audit and accept the Plaintiff Hospital's section 1115 waiver days was a final determination for which there is no administrative appeal. Therefore, this Court has jurisdiction to hear Plaintiff's appeal of this final determination. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986).

66. The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

67. The MAC's refusal to comply with the Manual Instructions, which bound the MAC, was arbitrary, capricious, an abuse of discretion, and contrary to the Medicare Act.

**Count III**

**Due Process Violation**

68. Plaintiff incorporates paragraphs 1-67 of this Complaint by reference.

69. It has a property right under the Fifth Amendment of the U.S. Constitution that requires the Secretary and the Secretary's agents to follow their own rules and give pre-deprivation and fair notice to the Plaintiff Hospital.

70. By imposing an unlawful requirement that the Plaintiff specifically identify "Section 1115 Waiver days" in its appeal request, the Board deprived it of due process because that requirement was contrary to the Secretary's regulations and because the Board's rules in effect at the time the Plaintiff Hospital filed its appeal request for a Board hearing did not give prior and fair notice of such a requirement.

**Count IV**

**Mandamus**

71. Plaintiff incorporates paragraphs 1-70 of this Complaint by reference.

72. Under 28 U.S.C. § 1361, federal district courts have "…original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

73. The Secretary and its agents have the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment and the Board has the non-discretionary duty to apply properly laws relating to its jurisdiction.

74. The MAC has refused to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023). These instructions require the MAC to accept audit and accept verified section 1115 waiver days for any appeal pending before the Board.

75. The Manual Instructions provide an independent legal basis, outside of the appeal before the Board, for the Plaintiff Hospital's section 1115 waiver days to be included in the Medicaid Fraction of its Disproportionate Payment Percentage.

76. Plaintiff Hospital has exhausted its administrative remedies by demanding that the MAC audit and accept verified section 1115 waiver days.

**Count V**

**All Writs Act**

77. Plaintiff incorporates paragraphs 1-76 of this Complaint by reference.

78. The DSH payment at issue violated the Medicare Act and APA. Under the All Writs Act, 28 U.S.C. § 1651(a): "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

79. This Court, properly seized of jurisdiction, should issue an order requiring CMS to make proper DSH payment to Plaintiff and pay appropriate underpayment interest thereon under 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

**Count VI**

**Judicial Review Under the Medicare Act**

**(The Board's Actions are Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Contrary to Law because Rule 8 is Procedurally Invalid)**

80. Plaintiff incorporates paragraphs 1-79 of this Complaint by reference.

81. Under 42 U.S.C. § 1395hh(b): "…the Secretary shall provide for notice of the proposed regulation in the Federal Register and a period of not less than 60 days for public comment thereon."

82. As there was no public notice-and-comment period for Rule 8 of the August 21, 2008, version of the PRRB Rules, the August 29, 2018, version of Rule 8 acts as a logical extension of the initial publication of Rule 8, and Rule 8 was indeed a change in the "substantive legal standard" regarding payment for services under the Medicare Act, PRRB Rule 8 is invalid, and the Board's implementation of the August 29, 2018 version of Rule 8 in this case was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

## Count VII

### Judicial Review Under the Medicare Act

### (Board Rule 8 and the Board's Application of it to Dismiss the Section 1115 "Sub-Issue" are Inconsistent with Regulation and Board Rule 7 and Not in Accordance with Law)

83. Plaintiff incorporates paragraphs 1-82 of this Complaint by reference.

84. The Board only has the authority to make rules and establish procedures that are not inconsistent with statute or the regulations of the Secretary and that are necessary or appropriate to carry out the statutory provision authorizing the Board.

85. Any requirement to identify components of issues is not in accordance with law. Any such requirement is not "necessary or appropriate to carry out the provisions" of the Medicare Act authorizing the PRRB appeals process and is inconsistent with statute and regulation.

86. Moreover, the Board's requirement that providers must identify "sub-issues" or "components" of issues arbitrarily and capriciously denies providers, including Plaintiff Hospital, the appeal rights to which they are entitled by statute.

## Count VIII

**Judicial Review Under the Medicare Act and APA**

**(The Board's Dismissal of the Medicaid Eligible Days Issue was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

87. Plaintiff incorporates paragraphs 1-86 of this Complaint by reference.

88. The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

89. The Board's dismissal of the DSH Payment – Medicaid Eligible Days issue was arbitrary, capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

## Count IX

**Judicial Review Under the Medicare Act and the APA**

**(The Board's Disregard of Plaintiff's Final Position Paper Filing was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

90. Plaintiff incorporates paragraphs 1-89 of this Complaint by reference.

91. The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

92. The Board's total disregard of Plaintiff's final position paper filing was arbitrary, capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

**REQUEST FOR RELIEF**

For all of the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order:

a. Reversing the Board's dismissal of the Medicaid eligible days issue and the section 1115 waiver days component of the appeal;

b. Directing the Secretary to direct its MAC to audit Plaintiff Hospital's listing of section 1115 waiver and Medicaid eligible days, accept all verified days, and include them in the Medicaid Fraction of Plaintiff Hospital's DPP for purposes of its DSH Adjustment;

c. Awarding Plaintiff Hospital's costs and reasonable attorneys' fees, and for interest; and;

d. For such other and further relief the Court deems just and proper.

Dated: September 8, 2026

Respectfully submitted,

ALAN SEDLEY LAW CORPORATION

By: */s/ Alan J. Sedley*
Alan J. Sedley, Esq. Bay # OH0017
18880 Douglas, Suite 417
Irvine, CA 92612
Phone: 818.601.0098
asedley@sedleyhealthlaw.com

*Attorney for Plaintiff*